**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  Case No. 94-81259

FREDERICK IRVIN,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION**
**FOR A SENTENCE MODIFICATION**

Defendant Frederick Irvin filed a motion *pro se* to modify his sentence, pursuant to 18 U.S.C. § 3582(c)(2), based on Amendment 750 to the Sentencing Guidelines. The Government and Defense counsel filed a stipulation in support of Defendant's motion. The United States Probation Department submitted a memorandum explaining that Amendment 750 does not alter Defendant's sentencing guideline range and, accordingly, Defendant is not entitled to a sentencing reduction. The motion has been fully briefed, and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will deny Defendant's motion.

**I. BACKGROUND**

On December 15, 1994, Defendant Frederick Irvin pled guilty to Conspiracy to Possess with Intent to Distribute Crack Cocaine and Cocaine, 21 U.S.C. § 846, (Count 1), and Possession of a Firearm During a Drug Offense, 18 U.S.C. § 924(c)(1), (Count 39). At sentencing on July 6, 1995, the court resolved Defendant's objections to the presentence report and determined that Defendant's base offense level for Count 1 was

38.  The court then adjusted Defendant's offense level by adding three levels for victim impact, U.S.S.G. § 3A1.2(b), adding four levels for Defendant's role in the offense, U.S.S.G. § 3B1.1(a), and subtracting three levels for Defendant's acceptance of responsibility, U.S.S.G. § 3E1.1(a)-(b), for a total offense level of 42.  Defendant had five criminal history points, placing him in Criminal History Category III.  The total offense level of 42 and Criminal History Category III established a sentencing range of 360 months-life.  The court sentenced Defendant to 480 months on Count 1.  As Count 39 carried a 60-month mandatory consecutive sentence, Defendant's total term was 540 months in custody.  On February 12, 1998, pursuant to a Rule 35 motion, the court reduced Defendant's sentence on Count 1 to 216 months.  The sentence on Count 39 remained at 60 months, for a new term of imprisonment of 276 months.

Defendant has moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).  Under that statute, a court may modify a term of imprisonment when a defendant has been sentenced based on a sentencing range that has been subsequently lowered by the Sentencing Commission.  Section 1B1.10 allows a court to reduce a defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2) when a guideline range applicable to that defendant has been lowered as a result of an amendment to the Guidelines Manual.  § 1B1.10(a)(1).  Amendment 750, effective November 1, 2010, permanently revised the quantity levels of cocaine base, also referred to as "crack cocaine," in the Drug Quantity table in U.S.S.G. § 2D1.1 to comply with the Fair Sentencing Act of 2010.  Defendant claims that Amendment 750 reduces his sentencing guideline range such that his sentence should be reduced from 276 months to time served.

2

## II. STANDARD

The court applies the two-step analysis outlined in *Dillon v. United States*, __ U.S. __, 130 S. Ct. 2683, 2691-92 (2010), when considering a motion to reduce a sentence. *United States v. Valentine*, 694 F.3d 665, 669 (6th Cir. 2012). First, the court decides whether the defendant is "eligible" for a sentence modification. *Id.* (citing *Dillon*, 130 S. Ct. at 2691-92). If so, the court then determines whether the reduction is warranted after considering the factors listed in 18 U.S.C. § 3553(a). *Id.* (citing *Dillon*, 130 S. Ct. at 2691-92). "A defendant is eligible for a sentence reduction only if the amendment has 'the effect of lowering the defendant's applicable guideline range' when the court substitutes the amendment for the corresponding guideline provision that was applied when the defendant was sentenced, leaving 'all other guideline application decisions unaffected.'" *Id.* at 670 (citing U.S.S.G. § 1B1.10(a)(2)(B); *Dillon*, 130 S. Ct. at 2691). The court decides whether "a preponderance of the evidence in the record establishes that the defendant is responsible for the quantity of drugs set forth in the retroactive amendment." *Id.* The court must examine "the record that was available to the original sentencing court," including "the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted." *Id.*

> If the record indicates that there was a finding of a specific quantity of drugs, either because the original sentencing judge made a specific finding or because the defendant admitted to a specific quantity, then the modification court must use that quantity and determine whether applying the retroactive amendment has the effect of lowering the Guideline range; if it does, the defendant is eligible, and the court proceeds to the second step of the *Dillon* analysis.

*Id.*

# III. DISCUSSION

Both the Government and Defendant argue that a base offense level of 34 should be applied because the record establishes Defendant was responsible for 1.5 kilograms of crack cocaine.  A base offense level of 34 requires at least 840 grams of crack cocaine but less than 2.8 kilograms.  The parties claim that at the plea hearing on December 15, 1994, the Government and Defendant stipulated to a quantity of 1.5 kilograms of crack cocaine.  The following pertinent testimony was given:

> Mr. Brunson (for the Government):
> [T]here was near the middle of October, a shipment of crack and powder cocaine that was sent by Mr. Beavers to Mr. Irvin's new home on Dillon Street in Saginaw and there was 614 grams of crack cocaine just in that one shipment alone.  There have been other shipments that had been arranged between Mr. Beavers and Mr. Irvin, we're prepared to prove at the time of trial one of these was a shipment of 500 grams, half a kilo of crack cocaine.  There was another stash house that Mr. Irvin used, at the time of a search warrant execution on October 19, and there were 28 grams of cocaine that were found in the residence at that time.  Then we have gone through—on the basis of the individual sales that are set forth in the indictment in the to-be-dismissed counts, there's a total of approximately 140 grams of crack cocaine.  That's just a direct hand to hand sort of—or hands on quantities there, and that's just over 180 grams, by my count, of crack cocaine.  As the court indicated in asking me a question, 1.5 kilograms is the figure which results in the very high guideline calculation that results here.

> The Court:
> It would have to be hundreds and hundreds of thousands of dollars worth of crack cocaine retail, if not in excess of that, Mr. Brunson, is that—am I correct about that?

> Mr. Brunson:
> You are, yeah.

> The Court:
> Mr. Currie [Defense counsel], is the defendant in a position to stipulate to the quantity of crack cocaine involved in the government's investigation?

> Mr. Currie:
> Yes, your Honor, we'll stipulate.

4

The Court:
> Let me ask you briefly about that, Mr. Irvin.  The government suggests here that if you were to add it all up in the course of your involvement in this offense and weigh it, there would be crack cocaine amounting to something like three and a half pounds or more.  That would be 1.5 kilograms on a metric scale.  Do you think the government has accurately estimated that amount of crack cocaine?

Mr. Irvin:
> Yes, sir.

(Plea Hr'g Tr. at 44-46, Dkt. # 1148-1.)  The parties argue that this testimony establishes that the total quantity of drugs attributable to Defendant was 1.5 kilograms of crack cocaine or, at most, some quantity of crack cocaine less than 2.8 kilograms, such that a base offense level of 34 should be applied.

The Probation Department asserts that the presentence report, which was accepted by the court during the sentencing hearing on July 6, 1995, establishes a much higher quantity of drugs attributable to Defendant.  The presentence report included a table that summarized the amount of crack cocaine and powder cocaine for which Defendant was responsible.  The table includes the instances in which Defendant either sold drugs in controlled purchases made by the Saginaw Police Department or received drugs from a shipment made by his accomplice, Eugene Beaver.  The table provides the dates on which Defendant sold or received drugs and the specific amount of crack cocaine or powder cocaine involved in each transaction.  The amounts aggregate to a total of 3,000.308 grams of crack cocaine and 1,463.4 grams of powder cocaine.  Defendant filed five objections to the presentence report but did not object to those quantities.  During the sentencing hearing, the court noted, "The quantity of drugs, there is no objection to[,] except as to the difference between crack cocaine scoring and

powder cocaine scoring.  That already has been objected to."  (Sentencing Hr'g Tr. at 16-17, Dkt. # 461.)

When a defendant does not object to the factual allegations contained in a presentence report, the defendant is deemed to have admitted those facts and is bound by them.  *United States v. Blackmon*, 380 F. App'x 498, 501 (6th Cir. 2010) ("Because [the defendant] did not object to the factual allegations in either sentencing report, he is bound by them."); *United States v. Adkins*, 429 F.3d 631, 632-33 (6th Cir. 2005) ("[B]y explicitly declining to object to the drug amount attributed to him in the [presentence report], [the defendant] admitted that fact."); *United States v. Stafford*, 258 F.3d 465, 476 (6th Cir. 2001) ("[A] defendant's statement of no objections to a presentence report constitutes an express admission of the amount and type of drugs attributed to the defendant in the [presentence report].") (citation and alteration omitted). By not objecting to the presentence report's allegations of 3,000.308 grams of crack cocaine and 1,463.4 grams of powder cocaine, Defendant admitted to those quantities.

Defendant's stipulation at the plea conference appears to conflict with his subsequent failure to object to the presentence report.  At the plea hearing, Defendant agreed that the Government had accurately estimated the amount of crack cocaine to be 1.5 kilograms.  But by not objecting to the quantities listed in the presentence report, Defendant admitted to 3,000.308 grams of crack cocaine and 1,463.4 grams of powder cocaine.  After considering the detailed presentence report and the testimony given in the plea hearing, the court finds that "a finding of a specific quantity of drugs" was made when Defendant failed to object to the presentence report.  When Defendant was sentenced in 1995, 1.5 kilograms was the minimal amount of crack cocaine needed to

6

establish the highest base offense level of 38.  U.S.S.G. § 2D1.1(a)(3), tbl. (c)(1) (1995).

At the plea hearing, the Government listed a few examples of the occurrences in which

crack cocaine were found to be attributable to Defendant before stating that "1.5

kilograms is the figure which results in the very high guideline calculation that results

here." (Plea Hr'g Tr. at 45, Dkt. # 1148-1.)  The court then addressed Defendant:

> The government suggests here that if you were to add it all up in the course
> of your involvement in this offense and weigh it, there would be crack cocaine
> amounting to *something like* three and a half pounds *or more*.  That would be
> 1.5 kilograms on a metric scale.  Do you think the government has accurately
> *estimated* that amount of crack cocaine?

(*Id.* at 45-46.) (emphasis added).  The court's phrasing indicates that the amount of 1.5

kilograms of crack cocaine to which Defendant stipulated was not based on a detailed

accounting of the drug quantities attributed to Defendant over the ten-month period he

obtained and distributed crack cocaine and powder cocaine.  Instead, a straightforward

reading of the transcript shows that the amount of 1.5 kilograms of crack cocaine was a

low-end estimation made by the Government, sufficient to establish the highest base

offense level of 38.  It was not offered as a statement of the greatest amount Defendant

could have possibly possessed.

In contrast, the presentence report lists the precise amounts of crack cocaine

and powder cocaine attributable to Defendant.  The report includes a summary table

containing eighteen separate entries, each providing the date on which Defendant either

sold or received drugs, the precise quantity of drugs involved in the transaction (often

listed to the hundredths place and, in one instance, the thousandths place), and the

investigative source that collected, analyzed, and measured the drugs.  Unlike the plea

hearing testimony, which only addressed the quantity of crack cocaine, the presentence

7

report includes the total quantity of crack cocaine *and* powder cocaine attributable to Defendant.  Indeed, by objecting to the presentence report scoring crack cocaine and powder cocaine differently, Defendant acknowledged that he would be sentenced for conspiracy to possess powder cocaine as well as crack cocaine.  Defendant cannot credibly argue that the 1.5 kilograms of crack cocaine to which he stipulated at the plea hearing is the total amount of drugs attributable to him when that amount did not include any amount of powder cocaine.

When the amount of drugs "cannot be easily determined, it is the duty of the District Court to estimate the amount, making sure to err on the side of caution and hold the defendant accountable for only the amount that he is more likely than not *actually* responsible for."  *Valentine*, 694 F.3d at 674 n.6.  It is not the case here that the amount of drugs cannot be determined.  Even though Defendant stipulated to the Government's estimation of 1.5 kilograms of crack cocaine during his plea hearing on December 15, 1995, Defendant subsequently admitted to 3,000.308 grams of crack cocaine and 1,463.4 grams of powder cocaine when he did not object to those quantities listed in the presentence report.  When "there was a finding of a specific quantity of drugs . . . because the defendant admitted to a specific quantity, then the modification court *must* use that quantity" when determining whether applying a retroactive amendment would lower the sentencing guideline range.  *Id.* at 670 (emphasis added).  Accordingly, the court must use the presentence report quantities in deciding whether Defendant is eligible for a sentence reduction.  Aggregating the marijuana equivalents of 3,000.308 grams of crack cocaine and 1,463.4 grams of powder cocaine provides a total of 11,006.779 kilograms of marijuana equivalent.  A quantity of at least 10,000 kilograms

8

of marijuana but less than 30,000 kilograms establishes a base offense level of 36.
After accounting for the same level adjustments and criminal history points that were
applied at Defendant's original sentencing, Defendant has a total offense level of 40 and
is in Criminal History Category III, resulting in a sentencing guideline range of 360
months-life.  As Defendant's original guideline range was 360 months-life, Amendment
750 does not lower Defendant's guideline range, and he is not eligible for a sentence
reduction.  Thus, Defendant is not entitled to any relief, and it is unnecessary to proceed
to the second step of the *Dillon* analysis.

### IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion to modify his sentence
[Dkt. # 1148] is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 10, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 10, 2013, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\94-81259.IRVIN.Deny.Modify.Sentence.wpd